Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 3/30/2023 11:24 AM
Envelope: 4045938
Reviewer: Lindsay Z.

Case 1:23-cv-00127-MRD-AEM     Document 5     Filed 03/31/23     Page 1 of 51 PageID #: 93

# EXHIBIT

# 1

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 3/30/2023 11:24 AM
Envelope: 4045938
Reviewer: Lindsay Z.

Case 1:23-cv-00123-MRD-LDA Document 1 Filed 03/30/23 Page 2 of 3 PageID #: 94

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| SHERRI MAESTAS and MICHELE WOODS, individually and on behalf of all similarly-situated employees,<br>    *Plaintiffs*, | |
| | C.A. No. _____ |
| v. | |
| KENT COUNTY MEMORIAL HOSPITAL and CARE NEW ENGLAND HEALTH SYSTEM,<br>    *Defendants*. | |

**DEFENDANTS' NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants Kent County Memorial Hospital and Care New England Health System (together, the "Defendants") hereby notice the removal of this action from the State of Rhode Island Superior Court, Kent County (the "Kent Superior Court"), where it is currently pending under Civil Action No. KC-2023-0143, to the United States District Court for the District of Rhode Island.

This case is removable under 28 U.S.C. § 1441(a) because Plaintiffs Sherri Maestas and Michele Woods (together, the "Plaintiffs") invoke the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, in Counts 4, 5, and 9 of their Complaint (attached hereto as *Exhibit A*), which supplies the Court with original jurisdiction under 28 U.S.C. § 1331.

As grounds for removing this matter, Defendants state as follows:

## I.   TIMELINESS OF REMOVAL

On March 2, 2023, Plaintiffs provided Defendants with a copy of their complaint and forms to waive service of summonses under R.I. Super. Ct. R.C.P. 4(d). *See* Waiver Forms, attached hereto as *Exhibit B*. Accordingly, Defendants are filing this Notice within the 30-day deadline set by 28 U.S.C. § 1446(b)(1).

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 3/30/2023 11:24 AM
Envelope: 4045938
Reviewer: Lindsay Z.

Case 1:23-cv-00137-MRD-AEM Document 1 Filed 03/30/23 Page 2 of 3 PageID #: 95

## II.    **VENUE**

Since Plaintiffs filed the Complaint within the Rhode Island Superior Court for Kent County, venue is proper in this Court because it is the "district and division embracing the place where [this] action is pending."  28 U.S.C. § 1441(a); *see* 28 U.S.C. § 120 (stating that "Rhode Island constitutes one judicial district.").

## III.    **BASIS FOR REMOVAL:  FEDERAL QUESTION JURISDICTION**

Defendants can remove this action under 28 U.S.C. § 1441(a) because the United States District Court has original jurisdiction over this case under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States." Counts 4, 5, and 9 of Plaintiffs' Complaint allege that Defendants violated the FLSA, and the other counts are so related to Plaintiffs' FLSA claims that they form a part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). As such, this Court has supplemental jurisdiction over Plaintiffs' non-FLSA claims. *Id.*

By invoking federal law, Plaintiffs' Complaint asserts a federal question under 28 U.S.C. § 1331 and is therefore removable under 28 U.S.C. § 1441(a). Accordingly, the Court has jurisdiction over this matter without regard to the amount in controversy or the citizenship of the parties.

## IV.    **CONCLUSION**

WHEREFORE, Defendants respectfully request that this Honorable Court take jurisdiction over this action and issue all necessary orders and process to remove said action from the Kent Superior Court to the United States District Court for the District of Rhode Island.

Defendants will file a copy of this Notice with the Clerk of the Kent Superior Court.

2

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 3/30/2023 11:24 AM
Envelope: 4045938
Reviewer: Lindsay Z.

Case 2:25-cv-00237-WBD-LT-M Document 1-5 Filed 08/30/23 Page 3 of 8 PageID #: 96

Respectfully submitted,

KENT COUNTY MEMORIAL HOSPITAL and
CARE NEW ENGLAND HEALTH SYSTEM,

By their Attorneys,

/s/ *Joseph D. Whelan*
/s/ *Matthew H. Parker*
/s/ *Timothy K. Baldwin*
Joseph D. Whelan (#5694)
Matthew H. Parker (#8111)
Timothy K. Baldwin (#7889)
WHELAN CORRENTE & FLANDERS LLP
100 Westminster Street, Suite710
Providence, RI 02903
Tel: 401-270-4500
Fax: 401-270-3760
jwhelan@whelancorrente.com
mparker@whelancorrente.com
tbaldwin@whelancorrente.com

Dated: March 30, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2023, I caused a copy of the foregoing document to be
served upon counsel of record via electronic mail as follows:

Chip Muller, Esq.
Nancy Sheinberg, Esq.
MULLER LAW, LLC
47 Wood Avenue
Barrington, RI 02806
chip@mullerlaw.com
nancy@mullerlaw.com

/s/ *Matthew H. Parker*

3

# EXHIBIT A

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 5:04 PM
Envelope: 3999978
Reviewer: Tracy K.Z.

STATE OF RHODE ISLAND                     SUPERIOR COURT
KENT COUNTY, SC.


SHERRI MAESTAS and MICHELE
WOODS, individually and on behalf
of all similarly-situated employees,
     *Plaintiffs,*

v.                                                     No._____

KENT COUNTY MEMORIAL HOSPITAL
and CARE NEW ENGLAND HEALTH SYSTEM,
     *Defendants.*

### **INDIVIDUAL, CLASS, AND COLLECTIVE ACTION COMPLAINT**

Plaintiffs Sherri Maestas and Michele Woods ("Named Plaintiffs"), individually and on behalf of all similarly-situated employees, by and through their counsel of Muller Law LLC, do hereby state and allege as follows:

### **INTRODUCTION**

1.    Hospital employees Sherri Maestas and Michele Woods, and their similarly situated, hourly-paid nursing staff co-workers (together, "Plaintiffs"), are current nursing staff employees of Care New England Health System ("CNE") and one of the hospitals in its system, Kent County Memorial Hospital ("Kent," and, together with CNE, "Defendants").

2.    Although the Plaintiffs have worked tirelessly caring for patients at Kent, particularly since the onset of the Covid-19 pandemic over three years ago, Defendants have consistently failed to pay Plaintiffs for all hours they worked and at legally-required wage rates.

3.    Plaintiffs Maestas and Woods each repeatedly sought out assistance to redress these blatant pay violations and other violations. However rather than resolve the issues, their complaints led to Defendants' retaliation against them through adverse employment conditions

1

including, but not limited to, a suspension of Ms. Maestas and cancellation of her shifts, bullying, less favorable work assignments, and a hostile work environment.

4.      Plaintiffs bring this action seeking payment of their unpaid wages, overtime premiums, retaliation damages, back pay, and other damages due to them under Federal and Rhode Island law.

## PARTIES, JURISDICTION AND VENUE

5.      Plaintiff Sherri Maestas is a resident of Providence, Rhode Island.

6.      Plaintiff Michele Woods is a resident of Coventry, Rhode Island.

7.      Kent County Memorial Hospital is a Rhode Island non-profit corporation with its primary headquarters in Warwick, Rhode Island.

8.      Care New England Health System is a Rhode Island non-profit corporation with its primary headquarters in Providence, Rhode Island.

9.      The Court has jurisdiction over this action pursuant to RI.G.L § 8-2-14.

10.     Venue is proper in this Court pursuant to RI.G.L § 9-4-3.

11.     The majority of events in this case occurred in Warwick, Rhode Island.

## FACTS

**I.      General Background on Plaintiffs' Work for Defendants**

12.     Unless otherwise noted, the facts described herein occurred during the three years prior to the filing of this lawsuit (the "Relevant Period").

13.     Both Named Plaintiffs are current employees of Defendants, working as hourly-paid members of the nursing staff at Kent in Warwick, Rhode Island.

14.     The nursing staff is made up of nurses, certified nursing assistants, and technicians and technologists involved with patient care.

2

15.     All nursing staff employees at Kent work under the direction of the Chief Nursing Officer.

16.     All nursing staff employees are involved in the care of patients at Kent.

17.     All hourly-paid nursing staff employees ("NS Employees") are subjected to the same pay practices which are the focus of this Complaint.

## II.    Defendants' Policies and Practices In Violation of Wage and Hour Laws

### A.     Defendants' Policy and Practice of Deterring Nursing Staff Employees from Viewing Their Hours-Worked Records

18.     Defendants followed a policy and practice of paying NS Employees on an hourly basis, with pay dates every two weeks.

19.     Defendants utilized the Kronos system to track NS Employees' work time.

20.     Except for a short period of time during which the Kronos system was not working, Defendants required each NS Employee to punch in at the beginning of their shift and punch out at the end of their shift.

21.     Defendants did not require or permit NS Employees to punch in and out for their meal breaks.

22.     Defendants rounded punch times to the nearest quarter hour for purposes of determining hours worked by NS Employees.

23.     Defendants created obstacles for the Named Plaintiffs and other NS Employees to review the accuracy of their time and pay records.

24.     Defendants provided NS Employees with complicated paystubs that, as one of Defendants' nurse managers described in an email to NS Employees, are "next to impossible to decipher."

25.     Defendants did not automatically provide NS Employees with access to their

3

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/20/2023 5:24 PM
Envelope: 3999578
Reviewer: Tracy K.Z.

Case 1:23-cv-00127-AEM Document 1 Filed 03/30/23 Page 5 of 49 PageID #: 101

Kronos accounts to review their recorded punch times or even inform NS Employees they could request such access. Instead, Defendants followed a policy and practice of requiring the NS Employees to specifically request access to their Kronos accounts and of denying requests by some NS Employees to access their Kronos accounts.

26.     Defendants also added other challenges to deter the Named Plaintiffs and other NS Employees from reviewing the accuracy of their time and pay records.

27.     For example, Defendants told Named Plaintiff Maestas that she could either have access to her time records via the Kronos system or access to the badge/finger punch-in system. After Ms. Maestas chose access to see her time records on Kronos, Defendants required her to clock in and out by locating an available computer on the floor of the hospital and log into a program to then register her clock in or clock out times, a process which was more challenging and time consuming than using the badge/finger punch-in system.

28.     On information and belief, Defendants implemented policies and practices deterring NS Employees from understanding their paychecks and checking their time records in order to decrease NS Employees' ability to verify that they had not been paid for all hours worked or at the proper rates for the hours they worked.

**B.  Defendants' Policy and Practice of Underpaying By Failing to Pay for All Hours Worked**

      **i.      Automatic Deductions for Meal Breaks**

29.     On information and belief, Defendants followed a policy and practice of automatically deducting time from each shift an NS Employee worked six and a half or more hours, on a rounded basis, for one or more meal break(s).

30.     On information and belief, Defendants followed a policy and practice of automatically deducting 30 minutes for a meal break from any shift an NS Employee worked that,

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracy K.Z.
102

on a rounded basis, was between six and a half and twelve and three-quarters hours ("Single-Deduction Shift").

31.     On information and belief, Defendants followed a policy and practice of automatically deducting two meal breaks, or 60 minutes, from any shift an NS Employee worked that, on a rounded basis, was thirteen hours or more ("Double-Deduction Shift").

32.     Each of the Named Plaintiffs regularly was not able to take a break during which she was relieved from her duties for 30 minutes ("Meal Break") during Single-Deduction Shifts.

33.     On information and belief, most NS Employees regularly were not able to take Meal Breaks during their Single-Deduction Shifts.

34.     On information and belief, Defendants were aware that the Named Plaintiffs and the other NS Employees regularly did not take a Meal Break during Single-Deduction Shifts.

35.     Neither of the Named Plaintiffs took two Meal Breaks during Double-Deduction Shifts.

36.     On information and belief, NS Employees generally did not take two Meal Breaks during a Double-Deduction Shift.

37.     On information and belief, with respect to Double-Deduction Shifts, Defendants' policy and practice did not permit NS Employees to take more than one Meal Break during a Double-Deduction Shift.

38.     Defendants did not inform the Named Plaintiffs that they were permitted to take two Meal Breaks during their Double-Deduction Shifts.

39.     On information and belief, Defendants did not inform the other NS Employees that they were permitted to take two Meal Breaks during their Double-Deduction Shifts.

40.     On information and belief, Defendants were aware that the Named Plaintiffs did

5

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:03 PM
Envelope: 3999578
Reviewer: Tracy K.Z.

Case 1:23-cv-00127-MRD-AEM   Document 1-8   Filed 03/00/23   Page 7 of 40   PageID #:
103

not take, and NS Employees generally did not take, two Meal Breaks during their Double-Deduction Shifts.

41.     On information and belief, Defendants were not able to fully staff their nursing staff at Kent, and Defendants frequently were unable to provide staff to relieve the Named Plaintiffs and other NS Employees during their shifts to allow them to take a Meal Break.

42.     The Named Plaintiffs and the other NS Employees worked in close proximity and under close observation of charge nurses and other managers who observed that the Named Plaintiffs and other NS Employees frequently did not take Meal Breaks.

43.     On several occasions during the height of the pandemic, top executives of Defendants, including Senior Human Resources Director Dean Carlson, wheeled around meal carts to the Named Plaintiffs and other NS Employees because the NS Employees were too busy to take Meal Breaks.

44.     Defendants did not require the Named Plaintiffs or the other NS Employees to take Meal Breaks, and Defendants did not inform the Named Plaintiffs or the other NS Employees that they were required to do so.

45.     Defendants prevented or discouraged NS Employees from being paid for the work they performed during time improperly deducted for Meal Breaks by a variety of methods.

46.     Despite their knowledge that the Named Plaintiffs and other NS Employees frequently did not take Meal Breaks, Defendants did not provide the Named Plaintiffs or other NS Employees with a reasonable or effective method to override the automatic 30- or 60-minute Meal Break deductions.

47.     Defendants did not effectively inform the Named Plaintiffs and other NS Employees that they could be paid for time wrongfully automatically deducted for the Meal Breaks

by reporting that they did not take the Meal Breaks.

48.     Defendants did not explain to the Named Plaintiffs or other NS Employees what the proper method was for reporting that Meal Breaks were not taken.

49.     Defendants did not have a policy and practice to ensure that reports the Named Plaintiffs and other NS Employees made to their managers or timekeepers about not taking a Meal Break resulted in the reversal of the automatic Meal Break deductions.  As a result, Defendants took deductions for Meal Breaks even after the Named Plaintiffs and other NS Employees reported that they did not take Meal Breaks.  Not only did this practice result in deduction of time worked in those instances, but it also reasonably discouraged NS Employees from notifying their managers or timekeepers that they had worked through Meal Breaks on other occasions.

50.     For example, on several occasions, even after Named Plaintiff Maestas informed her manager and/or timekeeper in emails or conversations that she had not taken one or two Meal Breaks during a Single-Deduction or Double-Deduction Shift, Defendants still deducted the Meal Breaks from her pay.

51.     As recently as December 28, 2022, Ms. Maestas emailed her timekeeper that she did not take a Meal Breaks on December 21, 2022 but was told that it was too late for her to be paid for the work she had performed.  Defendants never paid her for the work she performed.

52.     Although the charge nurses on a shift observed that the Named Plaintiffs and other NS Employees did not take Meal Breaks, Defendants did not have a policy and practice pursuant to which the charge nurses could effectively report that the Named Plaintiffs and other NS Employees did not take Meal Breaks.

53.     On information and belief, Defendants did not create a consistent procedure for charge nurses to follow to report when NS Employees did not take Meal Breaks and Defendants

7

did not train charge nurses to report when NS Employees did not take Meal Breaks.

54.    The Named Plaintiffs and other NS Employees worked time for which they were not paid as a result of Defendants' policy and practice of automatically reducing the time worked by the NS Employees by 30 or 60 minutes ("Automatic Meal Break Policy").

55.    Much of the time that the Named Plaintiffs and other NS Employees worked but were not paid for as a result of the Automatic Meal Break Policy were hours over 40 in a workweek ("Overtime Hours").

56.    Defendants knew that the Named Plaintiffs and the other NS Employees worked hours for which they were not paid as a result of the Automatic Meal Break Policy.

57.    Defendants knew that the Named Plaintiffs and the other NS Employees worked Overtime Hours for which they were not paid as a result of the Automatic Meal Break Policy.

### ii.    Improper Manual Hour Reduction, Punch Time Alterations, and Missing Shifts

58.    On information and belief, Defendants followed a policy and practice of encouraging and/or allowing managers and administrators to manually reduce the total time worked by the Named Plaintiffs and other NS Employees (by more than Meal Breaks) by manually reducing the total hours worked or altering punch times on the NS Employees' timecards ("Improper Manual Deductions Policy").

59.    For example, on February 20, 2022, Defendants deducted an hour and a half from the total time they recorded Named Plaintiff Maestas worked. According to her Kronos records, Ms. Maestas punched in at 2:58 p.m. and punched out at 7:33 a.m. the next morning. Rounding the punch times to the nearest quarter hours, pursuant to Defendants' rounding policy, resulted in 16.5 hours between rounded punches. Named Plaintiff Maestas worked during this Double-Deduction Shift without taking any Meal Breaks. Nonetheless, according to her Kronos timesheet

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracy K.Z.

106

(on which her pay was based), Defendants only credited her with 15 hours of work for this shift, a deduction of 90 minutes.

60.     Defendants similarly deducted 90 minutes of time from other shifts that Ms. Maestas worked, including on February 21 & 23 and March 3, 2022.

61.     On information and belief, Defendants also followed a policy and practice of encouraging and/or allowing managers and administrators to manually reduce the recorded total time worked by the Named Plaintiffs and other NS Employees by altering punch times in a manner that did not reflect the employees' actually clock in/out times or time worked by the employees.

62.     Defendants frequently urged NS Employees, including the Named Plaintiffs, to work longer hours than the shifts they were initially assigned to work. However, on information and belief, Defendants followed a policy and practice of periodically reducing the recorded hours of the NS Employees, including the Named Plaintiffs, by altering their punch times to match their shift times rather than the actual hours they worked.

63.     For example, Defendants manually altered the punch times of Named Plaintiff Maestas on dates including, but not limited to, March 27, 2021; April 3, 2021; and October 16 and 19, 2021 to reflect less time worked than she actually worked.

64.     Notations appear on the Kronos timekeeping system each time a manager or administrator manually changed the punch times of a NS Employee.

65.     On information and belief, Defendants did not provide training to the managers, timekeepers, and other employees to whom Defendants assigned the tasks of reviewing and altering the time records of the Named Employees and the other NS Employees.

66.     On information and belief, Defendants did not provide the managers, timekeepers, and other employees to whom Defendants assigned the task of reviewing and altering the time

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999573
Reviewer: Tracy K.Z.

107

records of the Named Employees and the other NS Employees with sufficient time to effectively complete such task.

67. On information and belief, Defendants did not require or direct the managers, timekeepers, and other employees to whom Defendants assigned the task of reviewing and altering the time records of the Named Employees and the other NS Employees to contact impacted NS Employees to confirm the accuracy of the manual alterations or even provide notification that the manual alteration was made.

68. On information and belief, the Kronos system periodically failed to register punch ins and punch outs for the Named Plaintiffs and other NS Employees some days, thus resulting in the Named Plaintiffs and other NS Employees missing credit and pay for entire shifts.

69. On information and belief, Defendants were aware that the punch ins and punch outs failed to register but followed a policy and practice of failing to provide alternative means for the Named Plaintiffs and other NS Employees to register their time worked or correct the resulting missing shifts ("Missing Shifts Policy").

70. Some of the hours for which Defendants failed to pay the Named Plaintiffs and the other NS Employees as a result of reducing their total shift times, altering punches, or missing shifts were Overtime Hours.

71. Many NS Employees, including the Named Plaintiffs, complained to managers that they were underpaid due to manual reductions of their hours worked or missing shifts.

72. On information and belief, Defendants knew that their Improper Manual Deductions and Missing Shifts Policies resulted in the Named Plaintiffs and other NS Employees not being paid for all regular and Overtime Hours they worked.

B.     **Policies and Practices Causing Failure to Pay Correct Rates**

    i.     **Failure to Pay Promised Incentive Pay**

73.     After the start of the Pandemic, Defendants followed a policy and practice of promising to pay NS Employees, including the Named Plaintiffs, an extra amount per hour above their regular pay to work certain shifts ("Bridge Pay").

74.     During part of the Relevant Period, Defendants promised Bridge Pay on all shifts worked each week regardless of regular schedules ("All-Shift Bridge Pay") to a subset of NS Employees, including the Named Plaintiffs ("All-Shift BP Employees").

75.     Defendants promised the Bridge Pay, including the All-Shift Bridge Pay, to entice the NS Employees to continue working at Kent and/or work additional shifts.

76.     Defendants promised the NS Employees, including the Named Plaintiffs, the Bridge Pay in writing, including through notices, email, texts, posters, and postings on an app Defendants utilized to offer shifts to NS Employees.  Defendants also promised Bridge Pay to NS Employees orally, including at morning huddles and in one-on-one conversations.

77.     However, despite the promises, Defendants followed policies and practices that resulted in the nonpayment or underpayment of promised Bridge Pay to NS Employees, including the Named Plaintiffs, for certain hours for which Defendants promised such pay.

78.     Defendants followed a policy and practice of failing to pay Bridge Pay to NS Employees, including the Named Plaintiffs, on hours Defendants improperly failed to count as time worked based on improper automatic deductions for meal breaks, improper manual deductions, and missing shifts.

79.     Defendants followed a policy and practice of having staff members with no education or training in payroll, accounting or a related field manually enter the hours worked for

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:02 PM
Envelope: 3999578
Reviewer: Tracy K. Z.
109

purposes of Bridge Pay. On information and belief, Defendants did not train such employees how to properly account for the Bridge Pay promised to NS Employees.

80. On information and belief, as a result of Defendants' policies and practices for awarding Bridge Pay, the staffing members tasked with entering hours worked for purposes of Bridge Pay sometimes undercalculated the hours for which NS Employees, including the Named Plaintiffs, were to be paid Bridge Pay.

81. At some point during the Relevant Period, Defendants determined that they would no longer pay Bridge Pay on all shifts worked by the All-Shift BP Employees.

82. However, rather than inform the All-Shift BP Employees of this policy moving forward, Defendants applied the policy retroactively, thus failing to pay Bridge Pay to the All-Shift BP Employees for shifts they had already worked pursuant to the promise they would be receiving Bridge Pay.

83. Defendants also followed a policy and practice of paying a lower rate of Bridge Pay than promised for certain hours worked by the Named Plaintiffs and the other NS Employees.

84. For example, on several occasions, Defendants followed a policy and practice of retroactively applying a lower rate of Bridge Pay to NS Employees, including the Named Plaintiffs, for work performed based on a promise of higher Bridge Pay.

85. On information and belief, Defendants knew that their policies and practices led to the underpayment of promised Bridge Pay to NS Employees, including the Named Plaintiffs.

### ii.    Overtime Premiums Failed to Include Incentive Pay

86. Defendants frequently paid NS Employees, including the Named Plaintiffs, Bridge Pay for hours they worked during weeks in which the NS Employees, including the Named Plaintiffs, worked Overtime Hours.

12

87. However, Defendants followed a policy and practice of not including the promised Bridge Pay in determining the regular rate of pay of the NS Employees, including the Named Plaintiffs, for purposes of calculating the time and a half of their regular rates owed on Overtime Hours ("Overtime Premium Pay").

88. Defendants followed a policy and practice of not including all promised All-Shift Bridge Pay in determining the regular rates of the All-Shift BP Employees, including the Named Plaintiffs, for purposes of calculating Overtime Premium Pay.

## II. Defendants' Retaliation Against Named Plaintiffs for Whistleblowing Actions

89. Named Plaintiff Maestas began noticing problems with Defendants' payment of wages and other operations soon after she began working at Kent in 2016.

90. She soon began pointing out concerns that Kent was violating state and federal laws and regulations to her managers on a regular basis.

91. Ms. Maestas reported wrongdoing in writing, on the phone, and/or in person to people and agencies including her nurse managers, timekeepers, staffing office, human resources, payroll, Defendants' compliance office, the DLT, the Federal Department of Labor ("DOL"), and the RI Attorney General ("AG").

92. Over the years, Ms. Maestas reported violations including, but not limited to, improper meal break deductions, altered punch times and inaccurate total hours worked resulting in underpayment of regular time and Overtime Hours; failure to provide paid sick leave to per diem NS Employees in violation of the newly enacted Rhode Island Safe and Sick Leave Law; failure to comply with safety regulations; and failure to pay promised incentive pay.

93. Ms. Maestas' reports have resulted in Defendants retaliating against her in numerous ways.

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:02 PM
Envelope: 3999578
Reviewer: Tracey K.Z.

Case 1:23-cv-00127-JJM-PAS Document 18 Filed 05/30/23 Page 15 of 19 PageID #: 111

94.     Ms. Maestas has been, and continues to be, bullied and subjected to a hostile work environment, disciplined, and denied opportunities to work in retaliation for her wage complaints.

95.     Defendants have humiliated, and continue to humiliate, Ms. Maestas by actions including belittling her, ostracizing her, wrongfully reprimanding her, and screaming at her in front of colleagues.

96.     On one occasion in April 2019, after Ms. Maestas raised concerns about incentive pay, a nurse manager texted colleagues badmouthing Ms. Maestas and complaining that she was "stirring the shit."

97.     Just six weeks later, Defendants suspended Ms. Maestas on the pretext that she was using her cell phone while on duty.  Defendants suspended Ms. Maestas even though they did not find that Ms. Maestas' use of her cell phone actually interfered with any of the duties she was required to perform; even though the use of cell phones while on duty by similarly-situated co-workers in Ms. Maestas' position was common; and even though Defendants did not suspend, or even reprimand, Ms. Maestas' similarly-situated co-workers who had not complained about wage and other violations for using their cell phones while on duty.

98.     The pattern continued after Ms. Maestas reported unsafe conditions that violated patient-safety regulations.  On March 3, 2021, Ms. Maestas notified her supervisor and the staffing office that her assignment of sitting with two agitated patients, each of whom required 1 to 1 sitter-patient care, was not safe.  Within ten minutes of her call to the staffing office, Defendants canceled all of the shifts Ms. Maestas had been scheduled to work during the next week.

99.     Defendants have assigned Ms. Maestas to tasks generally viewed as less favorable, such as sitting with agitated patients, at an unusually high rate while similarly-situated colleagues who had not reported about violations were only assigned such tasks periodically.

14

100.    Defendants have required Ms. Maestas to perform unsafe assignments, including sitting with multiple high-risk patients, while not requiring similarly-situated colleagues who have not reported violations to perform such tasks.

101.    Defendants have prohibited Ms. Maestas from taking paid breaks to the same extent as similarly-situated colleagues who have not reported violations.

102.    Defendants have also retaliated against Ms. Maestas by setting her up to fail and causing her a great deal of stress.

103.    For example, Defendants have falsely accused Ms. Maestas of being a "No Show" on occasions she timely arrived and worked her shift, failing to punch in or out when she had done so, and calling out for shifts to which she was not even assigned.

104.    On multiple occasions, Defendants did not notify Ms. Maestas of assignments to shifts starting within 24 hours of the assignment, which violated their own policy and practice and put Ms. Maestas at risk for being a "No Show."

105.    Defendants have made it more difficult for Ms. Maestas to punch in and punch out of work, requiring her to log into a computer (which are frequently difficult to locate) rather than using Defendants badge/finger punch in and punch out system.

106.    Defendants have manipulated Ms. Maestas' schedule, for example, requiring her to work multiple shifts with less than eight hours between shifts, in violation of their own policy.

107.    Defendants have refused to meet with Ms. Maestas on numerous occasions, taking months before agreeing to sit down with her to discuss her wage violation reports.  Defendants have also delayed correcting the numerous payment errors Ms. Maestas has pointed out to Defendants, despite eventually admitting in many instances that Ms. Maestas was correct.

108.    Defendants' actions have had a significant negative impact on Ms. Maestas,

15

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracey K.Z.
113

including causing her to miss hours of work and endure substantial emotional distress.

109.    Named Plaintiff Woods has also repeatedly reported concerns about wage and other violations, including missing regular and overtime time hours, unpaid and underpaid Bridge Pay, undercalculated wages during the Kronos Failure Period, improperly withheld taxes, and improperly withheld 401(k) contributions.  In the last few years, Ms. Woods has repeatedly contacted individuals and agencies, including her managers, Defendants' payroll, HR department and compliance officer, the DLT, RI AG, and the IRS, seeking redress for the violations.

110.    Since, and as a result of, her reports, Ms. Woods too has been, and continues to be, subjected to adverse employment actions, including being ostracized, being set up to fail including by being wrongfully reprimanded by her managers, and being repeatedly required to perform less favorable assignments to a much greater degree than her similarly-situated colleagues who have not reported wage and other violations.

111.    Defendants' actions have had a significant negative impact on Ms. Woods, including causing her a great deal of emotional distress.

## **COLLECTIVE AND CLASS ACTION ALLEGATIONS**

### A.    **Collective Action Allegations for FLSA Claims**

112.    Named Plaintiffs Sherri Maestas and Michele Woods bring collective action claims for failure to pay Overtime Premium Pay pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and the following three overlapping groups of similarly-situated employees:

(i)     NS Employees who worked Overtime Hours but were not paid all Overtime Premium Pay owed as result of Defendants' Automatic Meal Break Policy in one or more week(s) during the three years prior to the filing of the Complaint ("Overtime – Automatic Meal Break Collective Plaintiffs");

(ii)    NS Employees who worked Overtime Hours but were not paid all Overtime Premium Pay owed as result of Defendants' Improper Manual Deductions and Missing Shifts Policies in one or more week(s) during the three years

prior to the filing of the Complaint ("Overtime – Manual Deductions Collective Plaintiffs"); and

(iii)     NS Employees who worked Overtime Hours in weeks in which Defendants promised them All-Shift Bridge Pay but were not paid all Overtime Premium Pay owed as result of Defendants' failure to include all All-Shift Bridge Pay for the week in regular rates for purposes of calculating Overtime Premium Pay in one or more week(s) during the three years prior to the filing of the Complaint ("Overtime – Bridge Pay Collective Plaintiffs" and, together with the Overtime – Automatic Meal Break Collective Plaintiffs and the Overtime – Manual Deductions Collective Plaintiffs, the "Overtime Collective Plaintiffs").

113.     The Named Plaintiffs are similarly situated to the Overtime – Automatic Meal Break Collective Plaintiffs, as Defendants followed policies and practices of failing to pay the Named Plaintiffs and all other Overtime – Automatic Meal Break Collective Plaintiffs for certain Overtime Hours they worked as a result of Defendants' Automatic Meal Break Policy.

114.     The Named Plaintiffs are similarly situated to the Overtime – Manual Deduction Collective Plaintiffs, as Defendants followed policies and practices of failing to pay the Named Plaintiffs and all other Overtime – Manual Deduction Collective Plaintiffs for certain Overtime Hours they worked as a result of Defendants' Improper Manual Deductions and Missing Shifts Policies.

115.     The Named Plaintiffs are similarly situated to the Overtime – Bridge Pay Collective Plaintiffs, as Defendants followed policies and practices of failing to include all All-Shift Bridge Pay in regular rates for calculating the Overtime Premium Pay Defendants paid the Named Plaintiffs and all other Overtime – Bridge Pay Collective Plaintiffs.

**B.     Class Action Allegations for Rhode Island State Law Claims**

116.     Representative Plaintiffs Sherri Maestas and Michele Woods bring claims on behalf of themselves and six overlapping subgroups of Plaintiffs (together, "Class Plaintiffs"):

(i)      all NS Employees who worked at least one Single-Deduction Shift or Double Deduction Shift but were not paid for all time worked as a result of

17

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracy K.Z.

115

Defendants' Automatic Meal Break Policy at any time during the three years prior to the filing of this Complaint ("Automatic Meal Break Class Plaintiffs");

(ii)     all NS Employees who were not paid for all time worked as a result of Defendants' Improper Manual Deductions and Missing Shifts Policies at any time during the three years prior to the filing of this Complaint ("Manual Deductions Class Plaintiffs," and, together with the Automatic Meal Break Class Plaintiffs, the "Unpaid Hours Class Plaintiffs");

(iii)    all NS Employees who were not paid Bridge Pay as promised at any time during the three years prior to the filing of this Complaint ("Bridge Pay Class Plaintiffs");

(iv)    all NS Employees who worked Overtime Hours that were not paid as a result of Defendants' Automatic Meal Break Policy at any time during the three years prior to the filing of this Complaint ("Overtime – Automatic Meal Break Class Plaintiffs");

(v)     all NS Employees who worked Overtime Hours that were not paid as a result of Defendants' Improper Manual Deductions and Missing Shifts Policies at any time during the three years prior to the filing of this Complaint ("Overtime –Manual Deductions Class Plaintiffs," and, together with the Overtime – Automatic Meal Break Class Plaintiffs, "Overtime – Unpaid Hours Class Plaintiffs"); and

(vi)    all NS Employees who worked Overtime Hours in a week in which Defendants promised them All-Shift Bridge Pay but who were not paid all Overtime Premium Pay owed as a result of Defendants' failure to include all All-Shift Bridge Pay for the week in regular rates for purposes of calculating Overtime Premium Pay at any time during the three years prior to the filing of this Complaint ("Overtime - Bridge Pay Class Plaintiffs," and together with the Overtime – Unpaid Hours Class Plaintiffs, the "Overtime Class Plaintiffs").

117.    The number of Class Plaintiffs in each of the classes, each of which includes more than 40 individuals, is so numerous that joinder of the Class Plaintiffs in each group is impracticable.

118.    For each of the six classes, there are common questions of law and fact related to the claims of all Class Plaintiffs in the class.

18

119.   With respect to the Automatic Meal Break Class Plaintiffs, common questions of law and fact include: (i) Did Defendants have a policy or practice during the Relevant Period of automatically deducting 30 or 60 minutes of time between punch in and punch out for the NS Employees who worked Single-Deduction or Double-Deduction Shifts? (ii) Did Defendants have a policy or practice during the Relevant Period that deterred the NS Employees who worked Single-Deduction or Double-Deduction Shifts from regularly taking one or two Meal Breaks? (iii) Were Defendants aware during the Relevant Period that NS Employees who worked Single-Deduction or Double-Deduction Shifts were regularly not taking one or two Meal Breaks? and (iv) Did Defendants have a policy or practice during the Relevant Period of discouraging or preventing the reversal of automatic deductions for Meal Breaks by NS Employees who did not take such Meal Breaks during Single-Deduction or Double-Deduction Shifts?

120.   With respect to the Manual Deductions Class Plaintiffs, common questions of law and fact include: (i) Did Defendants have a policy or practice during the Relevant Period of allowing or encouraging timekeepers and other staff members to manually alter the punch times or total time worked by NS Employees to improperly reduce the reported time worked by NS Employees at Kent? (ii) Did Defendants have a system during the Relevant Period that failed to register punch ins and punch outs for certain shifts? (iii) Did Defendants have a policy or practice during the Relevant Period that failed to properly oversee manual alterations to punch times or total time worked calculations or the failure of certain shifts to register? (iv) Did Defendants have a policy or practice during the Relevant Period of discouraging or preventing the corrections of deductions of time worked by NS Employees who had their time worked improperly reduced through manual changes to their timecards or errors from the failure of punch times to register?

19

121.     With respect to the Bridge Pay Class Plaintiffs, common questions of law and fact include: (i) Did Defendants have a policy or practice during the Relevant Period of promising Bridge Pay to NS Employees? (ii) Did Defendants have a policy or practice during the Relevant Period of failing to implement effective timekeeping practices to insure they paid the Bridge Pay promised to NS Employees? and (iii) Did Defendants have a policy or practice during the Relevant Period of not paying NS Employees the Bridge Pay rate they promised such employees?

122.     With respect to the Overtime – Unpaid Hours Class Plaintiffs, common questions of law and fact include: (i) Are all of the NS Employees non-exempt for purposes of overtime under the Rhode Island Minimum Wage Act, R.I. Gen. Laws § 28-12-1 et. seq. ("RIMWA")? and (ii) Did Defendants have a policy and practice during the Relevant Period of failing to record all Overtime Hours worked by NS Employees, including as a result of Defendants' Automatic Meal Break Policy and Improper Manual Deduction and Missing Shifts Policies?

123.     With respect to the Overtime – Bridge Pay Class, common questions of law and fact include: (i) Are all of the NS Employees non-exempt for purposes of the RIMWA? (ii) Does the RIMWA require an employer to include All-Shift Bridge Pay in the regular rate for purposes of calculating Overtime Premium Pay? and (iii) Did Defendants have a policy and practice during the Relevant Period of not including Bridge Pay in the regular rate of NS Employees during the weeks in which they worked Overtime Hours for purposes of calculating their Overtime Premium Pay when required to do so?

124.     The claims of both of the Named Plaintiffs are typical of the claims of all members of each class. Both of the Named Plaintiffs were subjected to the identical compensation policies which are at the heart of the claims of each of the classes. Specifically, both of the Named Plaintiffs, like the similarly-situated Class Plaintiffs in each respective class, (i) had one or two

20

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracy K.Z.

Case 1:23-cv-00127-MRD-AEM Document 1-8 Filed 03/30/23 Page 22 of 52 PageID #: 118

Meal Breaks automatically deducted from Single-Deduction and Double-Deduction Shifts, respectively; (ii) lost wages for time worked as a result of improper manual alterations of punch-times and total time worked and unregistered shifts; (iii) were not paid all Bridge Pay promised to them as a result of missing hours worked, missing Bridge Pay for hours credited as worked, and lower rates of Bridge Pay than promised, and (iv) were not paid all Overtime Premium Pay owed as a result of unrecorded hours worked and exclusion of All-Shift Bridge Pay from regular rates used for Overtime Premium Pay.

125.    The Named Plaintiffs will fairly and adequately represent and protect the interests of the Class Plaintiffs.  The Named Plaintiffs' claims for damages for unpaid hours worked, unpaid Bridge Pay, and unpaid overtime are typical of the damages claims held by the rest of the members of the Class Plaintiffs in each respective class.

126.    The Named Plaintiffs have no known conflicts with any of the Class Plaintiffs.

127.    The Named Plaintiffs have retained counsel competent and experienced in complex class action and wage and hour litigation who will vigorously pursue this action for the benefit of all Class Plaintiffs.

128.    Class certification is appropriate because the questions of law and fact common to each of the six classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

129.    The damages of many of the Class Plaintiffs in each of the six classes may be so small as to make the expense and burden of individual litigation impractical and redress of class members' harm impossible.

130.    This Court will have no difficulty managing this case as a class action.

21

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracey Z.

119

131.    The Named Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that would preclude its approval as a class action.

## CLAIMS FOR RELIEF

### COUNT 1
### FAILURE TO PAY WAGES DUE:
### EXCLUDED TIME WORKED DUE TO AUTOMATIC MEAL BREAK DEDUCTIONS
### R.I. GEN. LAWS, § 28-14-1 *et seq.*
### (On Behalf of Plaintiffs Sherri Maestas and Michele Woods, individually and on behalf of all Similarly-Situated Automatic Meal Break Class Plaintiffs)

132.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

133.    The Named Plaintiffs bring this claim individually and on behalf of all similarly-situated Automatic Meal Break Class Plaintiffs.

134.    During the relevant time, Defendants were each the direct or joint employer of each Named Plaintiff and each other Class Plaintiff.

135.    Defendants failed to pay each Named Plaintiff and each other Automatic Meal Break Class Plaintiff wages for time they worked as a result of Defendants' Automatic Meal Break Policy.

136.    Defendants were aware that each Named Plaintiff and each other Automatic Meal Break Class Plaintiff did not take Meal Breaks for which their work time was deducted pursuant to Defendants' Automatic Meal Break Policy.

137.    Defendants discouraged or prevented each Named Plaintiff and each other Automatic Meal Break Class Plaintiff from effectively notifying Defendants to reverse most automatic deductions made pursuant to Defendants' Automatic Meal Break Policy for Meal Breaks they did not take.

22

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/20/2023 3:04 PM
Envelope: 4009573
Reviewer: Tracy K.Z.

Case 1:23-cv-00127-MRD-AEM Document 18 Filed 05/08/23 Page 24 of 51 PageID #: 120

138.     Defendants failed to timely reverse most automatic deductions made pursuant to Defendants' Automatic Meal Break Policy for Meal Breaks that Named Plaintiffs and other Automatic Meal Break Class Plaintiffs did not take even when Defendants had notice that the Named Plaintiffs or other Automatic Meal Break Class Plaintiffs had not taken Meal Breaks during a shift.

139.     Defendants were aware that, as a result of their Automatic Meal Break Policy, Defendants failed to pay each Named Plaintiff and each other Automatic Meal Break Class Plaintiff wages for time such Plaintiffs worked in violation of the Rhode Island Payment of Wages Act ("RIPWA").

140.     Defendants are jointly and severally liable to the Named Plaintiffs and all other Automatic Meal Break Class Plaintiffs for their failure to pay the Named Plaintiffs and all other Automatic Meal Break Class Plaintiffs all wages due for their work at Kent, liquidated damages of up to two times such wages due, attorneys' fees, costs, interest, and all other relief deemed just and proper.

### COUNT 2
### FAILURE TO PAY WAGES DUE:
### EXCLUDED TIME WORKED DUE TO IMPROPER MANUAL DEDUCTIONS OF
### TIME WORKED AND MISSING SHIFTS
### R.I. GEN. LAWS, § 28-14-1 *et seq.*
**(On Behalf of Plaintiffs Sherri Maestas and Michele Woods, individually and on behalf of all Similarly-Situated Manual Deductions Class Plaintiffs)**

141.     Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

142.     The Named Plaintiffs bring this claim individually and on behalf of all similarly-situated Manual Deductions Class Plaintiffs.

23

143.     Defendants failed to pay each Named Plaintiff and each other Manual Deductions Class Plaintiff wages for time they worked as a result of Defendants' Improper Manual Deductions and Missing Shifts Policies.

144.     Defendants were aware that, as a result of their Improper Manual Deductions and Missing Shifts Policies, Defendants failed to pay each Named Plaintiff and each other Manual Deductions Class Plaintiff wages for time such Plaintiffs worked in violation of the RIPWA.

145.     Defendants are jointly and severally liable to the Named Plaintiffs and all other Manual Deductions Class Plaintiffs for their failure to pay the Named Plaintiffs and all other Manual Deductions Class Plaintiffs all wages due for their work at Kent, liquidated damages of up to two times such wages due, attorneys' fees, costs, interest, and all other relief deemed just and proper.

### COUNT 3
### FAILURE TO PAY WAGES DUE:
### FAILURE TO PAY PROMISED BRIDGE PAY
### R.I. GEN. LAWS, § 28-14-1 *et seq.*
### (On Behalf of Plaintiffs Sherri Maestas and Michele Woods, individually and on behalf of all Similarly-Situated Bridge Pay Class Plaintiffs)

146.     Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

147.     The Named Plaintiffs bring this claim individually and on behalf of all similarly-situated Bridge Pay Class Plaintiffs.

148.     Defendants promised to pay the Named Plaintiffs and the other Bridge Pay Class Plaintiffs Bridge Pay in order to entice them to continuing working at Kent and/or work additional hours at Kent.

149.     Each Named Plaintiff and each other Bridge Pay Class Plaintiff worked such hours under the condition that they would be paid the promised Bridge Pay.

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracy K.Z.

122

150.    Defendants failed to pay each Named Plaintiff and each other Bridge Pay Class Plaintiff all of the Bridge Pay that Defendants promised to pay in violation of the RIPWA by failing to pay Bridge Pay on all hours for which Bridge Pay was promised.

151.    Defendants failed to pay each Named Plaintiff and each other Bridge Pay Class Plaintiff all of the Bridge Pay that Defendants promised to pay in violation of the RIPWA by failing to pay the full rate of Bridge Pay promised.

152.    Defendants are jointly and severally liable to the Named Plaintiffs and all other Bridge Pay Class Plaintiffs for their failure to pay the Named Plaintiffs and all other Bridge Pay Class Plaintiffs all wages due for their work at Kent, liquidated damages of up to two times the such wages due, attorneys' fees, costs, interest, and all other relief deemed just and proper.

**COUNT 4**
**FAILURE TO PAY OVERTIME WAGES:**
**FAILURE TO COUNT ALL OVERTIME HOURS WORKED**
**FAIR LABOR STANDARDS ACT, 29 U.S.C § 201** *et seq.*
**(On Behalf of Plaintiffs Sherri Maestas and Michele Woods, individually and on behalf of all Similarly-Situated Overtime – Unpaid Hours Collective Plaintiffs)**

153.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

154.    The Named Plaintiffs bring this claim individually and on behalf of all similarly-situated Overtime – Unpaid Hours Collective Plaintiffs.

155.    Defendants are enterprises engaged in the operation of a hospital, as defined by 29 U.S.C. § 203(s)(2).

156.    Defendants each suffered or permitted each Named Plaintiff and each other Overtime Collective Plaintiff to work at Kent, as either a direct or joint employer.

157.    During all relevant time, the Named Plaintiffs and the other Overtime Collective Plaintiffs were hourly paid and were non-exempt under the FLSA.

25

158.     Pursuant to the FLSA, 29 U.S.C. § 207(a), during all relevant time, the Defendants were required to pay Overtime Premium Pay to all Named Plaintiffs and all other Overtime Collective Plaintiffs for all Overtime Hours they worked.

159.     As a result of their policies and practices, including their Automatic Meal Break Policy and Improper Manual Deductions and Missing Shifts Policies, Defendants frequently failed to count, and pay wages for, all Overtime Hours the Named Plaintiffs and the other Overtime – Unpaid Hours Collective Plaintiffs worked.

160.     The Defendants' failure to pay Overtime Premium Pay to the Named Plaintiffs and other Overtime – Unpaid Hours Collective Plaintiffs for all Overtime Hours they worked violated the FLSA.

161.     The Defendants acted willfully or with reckless disregard as to their obligation to pay Overtime Premium Pay to the Named Plaintiffs and the other Overtime – Unpaid Hours Collective Plaintiffs, and accordingly, the violation was willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260.

162.     The Defendants are jointly and severally liable to the Named Plaintiffs and the other Overtime – Unpaid Hours Collective Plaintiffs under the FLSA for their failure to pay Overtime Premium Pay in an amount equal to such unpaid Overtime Premium Pay, liquidated damages on unpaid Overtime Premium Pay, attorneys' fees, costs, interest, and all other relief deemed just and proper.

### COUNT 5
### FAILURE TO PAY OVERTIME:
### FAILURE TO INCLUDE BRIDGE PAY IN OVERTIME WAGES
### FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 *et seq.*
**(On Behalf of Plaintiffs Sherri Maestas and Michele Woods, individually and on behalf of all Similarly-Situated Overtime – Bridge Pay Collective Plaintiffs)**

26

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracy K.Z.

Case 1:23-cv-00127-MRD-AEM Document 1 Filed 05/30/23 Page 28 of 51 PageID #: 124

163. Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

164. The Named Plaintiffs bring this claim individually and on behalf of all similarly-situated Overtime – Bridge Pay Collective Plaintiffs.

165. Defendants followed a policy and practice of failing to include All-Shift Bridge Pay in the regular rate of the Named Plaintiffs and the other Overtime – Bridge Pay Collective Plaintiffs for purposes of calculating Overtime Premium Pay for Overtime Hours worked during workweeks in which the All-Shift Bridge Pay was earned.

166. The Defendants' failure to include All-Shift Bridge Pay in the Named Plaintiffs' and the other Overtime – Bridge Pay Collective Plaintiffs' regular rates for purposes of calculating Overtime Premium Pay for Overtime Hours worked during the workweek in which they earned the All-Shift Bridge Pay violated the FLSA.

167. Defendants acted willfully or with reckless disregard as to their obligation to include All-Shift Bridge Pay in the regular rates of the Named Plaintiffs and the other Overtime – Bridge Pay Collective Plaintiffs for purposes of calculating Overtime Premium Pay, and accordingly, the violation was willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260.

168. Defendants are jointly and severally liable to the Named Plaintiffs and the other Overtime – Bridge Pay Collective Plaintiffs under the FLSA for their failure to include All-Shift Bridge Pay in regular rates for purposes of calculating Overtime Premium Pay in an amount equal to the resulting unpaid portion of the Overtime Premium Pay, liquidated damages on the unpaid portion of the Overtime Premium Pay, attorneys' fees, costs, interest, and all other relief deemed just and proper.

27

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracy K.Z.

Case 1:23-cv-00127-MRD-AEM Document 1-8 Filed 03/30/23 Page 29 of 40 PageID #: 125

**COUNT 6**
**FAILURE TO PAY OVERTIME WAGES:**
**EXCLUDED OVERTIME HOURS WORKED**
**R.I. GEN. LAWS, § 28-12-1 *et seq.* & § 28-14-19.2**
**(On Behalf of Plaintiffs Sherri Maestas and Michele Woods, individually and on behalf of**
**all Similarly-Situated Overtime – Unpaid Hours Class Plaintiffs)**

169.     Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

170.     The Named Plaintiffs bring this claim individually and on behalf of all similarly-situated Overtime – Unpaid Hours Class Plaintiffs.

171.     During all relevant time, Defendants each suffered or permitted each Named Plaintiff and each other Overtime Class Plaintiff to work at Kent, as either a direct or joint employer.

172.     During all relevant time, the Named Plaintiffs and the other Overtime Class Plaintiffs were hourly paid and were non-exempt under the RIMWA.

173.     Pursuant to the RIMWA, Defendants were required to pay Overtime Premium Pay to all Named Plaintiffs and all other Overtime Class Plaintiffs for all Overtime Hours they worked.

174.     During all relevant time, as a result of their policies and practices, including their Automatic Meal Break Policy and Improper Manual Deductions and Missing Shifts Policies, Defendants frequently failed to count, and pay wages for, all Overtime Hours the Named Plaintiffs and the other Overtime – Unpaid Hours Class Plaintiffs worked.

175.     The Defendants' failure to pay Overtime Premium Pay to the Named Plaintiffs and other Overtime – Unpaid Hours Class Plaintiffs for all Overtime Hours they worked violated the RIMWA.

176.     Defendants acted willfully or with reckless disregard as to their obligation to pay Overtime Premium Pay to the Named Plaintiffs and the other Overtime – Unpaid Hours Class

28

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999573
Reviewer: Tracy K.Z.
126

Plaintiffs.

177.    Defendants are jointly and severally liable to the Named Plaintiffs and the other

Overtime – Unpaid Hours Class Plaintiffs under the RIMWA for their failure to pay Overtime

Premium Pay in an amount equal to such unpaid Overtime Premium Pay, liquidated damages of

up to two times the unpaid Overtime Premium Pay, attorneys' fees, costs, interest, and all other

relief deemed just and proper.

**COUNT 7**
**FAILURE TO PAY OVERTIME:**
**FAILURE TO INCLUDE BRIDGE PAY IN OVERTIME WAGES**
**R.I. GEN. LAWS, § 28-12-1 *et seq.* & § 28-14-19.2**
**(On Behalf of Plaintiffs Sherri Maestas and Michele Woods, individually and on behalf of**
**all Similarly-Situated Overtime – Bridge Pay Class Plaintiffs)**

178.    Plaintiffs repeat and incorporate by reference all allegations above and below as if

fully set forth here.

179.    The Named Plaintiffs bring this claim individually and on behalf of all similarly-

situated Overtime – Bridge Pay Class Plaintiffs.

180.    The Defendants' failure to include All-Shift Bridge Pay in the Named Plaintiffs'

and the other Overtime – Bridge Pay Class Plaintiffs' regular rates for purposes of calculating

Overtime Premium Pay for Overtime Hours worked during the workweek in which they earned

the All-Shift Bridge Pay violated the RIMWA.

181.    Defendants acted willfully or with reckless disregard as to their obligation to

include All-Shift Bridge Pay in the regular rates of the Named Plaintiffs and the other Overtime –

Bridge Pay Class Plaintiffs for purposes of calculating Overtime Premium Pay.

182.    Defendants are jointly and severally liable to the Named Plaintiffs and the other

Overtime – Bridge Pay Class Plaintiffs under the RIMWA for their failure to include All-Shift

Bridge Pay in regular rates for purposes of calculating Overtime Premium Pay in an amount equal

29

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 4009578
Reviewer: Tracy K.Z.

Case 1:23-cv-00127-AFM Document 1-8 Filed 03/30/23 Page 31 of 51 PageID #: 127

to the resulting unpaid portion of the Overtime Premium Pay, liquidated damages of up to two times the unpaid portion of the Overtime Premium Pay, attorneys' fees, costs, interest, and all other relief deemed just and proper.

## COUNT 8
## WHISTLEBLOWER RETALIATION
### R.I. GEN. LAWS, § 28-50-1 *et seq.*
**(On Behalf of Plaintiffs Sherri Maestas and Michele Woods, individually)**

183.    Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

184.    Named Plaintiff Maestas repeatedly engaged in protected activity under the R.I. Whistleblower's Protection Act ("RIWPA") by reporting Defendants' violation of wage, safety, and other laws and regulations ("RIWPA Protected Reports").

185.    Defendants penalized Ms. Maestas for her RIWPA Protected Reports by denying her privileges of employment in retaliation for her RIWPA Protected Reports from before the start of the Relevant Period through the present.

186.    Defendants penalized Ms. Maestas during the Relevant Period for her RIWPA Protected Reports by actions including, but not limited to, canceling her shifts in March 2021; ostracizing, bullying, belittling, and wrongfully reprimanding her in front of colleagues; subjecting her to less favorable and unsafe assignments; limiting her paid breaks; requiring her to work a more difficult schedule; denying her access to the badge/finger punch in system; and setting her up to fail.

187.    Defendants' actions have had a significant negative impact on Ms. Maestas, including causing her to miss hours of work and endure substantial emotional distress.

188.    Named Plaintiff Woods also repeatedly engaged in protected activity under the RIWPA by reporting Defendants' violation of wage and other laws and regulations to people and

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracy K.Z.

Case 1:23-cv-00127-MRD-AEM Document 1-8 Filed 03/30/23 Page 32 of 36 PageID #: 128

agencies, including managers, Defendants' payroll, HR department and compliance officer, the DLT, RI AG, and the IRS, seeking redress for the violations.

189.     Defendants denied Ms. Woods the privileges of employment in retaliation for her RIWPA Protected Reports.  Defendants penalized Ms. Woods during the Relevant Period for her RIWPA Protected Reports by actions including, but not limited to, ostracizing her; wrongfully reprimanding her; and subjecting her to less favorable assignments.

190.     Defendants' actions have had a significant negative impact on Ms. Woods, including causing her a great deal of emotional distress.

191.     Defendants are jointly and severally liable to Ms. Maestas and Ms. Woods under the RIWPA for lost back wages, emotional distress, and other injury or loss that Ms. Maestas and Ms. Woods incurred, respectively, as a result of Defendants' retaliation for their RIWPA Protected Activity, liquidated treble damages for all such injury or loss, attorneys' fees, costs, interest, and all other relief deemed just and proper.

## COUNT 9
### FLSA RETALIATION
### FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 *et seq.*
### (On Behalf of Plaintiff Sherri Maestas and Michele Woods, individually)

192.     Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

193.     Ms. Maestas and Ms. Woods repeatedly engaged in protected activity under the FLSA by reporting Defendants' failure to pay Overtime Premium Pay in violation of the FLSA ("FLSA Protected Reports").

194.     Defendants discriminated against Ms. Maestas and Ms. Woods for their FLSA Protected Reports by denying them privileges of employment in retaliation for their FLSA Protected Reports from before the Relevant Period through the present.

31

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/29/2023 3:04 PM
Envelope: 3999578
Reviewer: Tracy K. Z.

Case 1:23-cv-00120-MRD-AEM Document 1-8 Filed 03/30/23 Page 33 of 51 PageID #: 129

195.     Defendants discriminated against Ms. Maestas during the Relevant Period for her FLSA Protected Reports by actions including, but not limited to, canceling her shifts in March 2021; ostracizing, bullying, belittling, and wrongfully reprimanding her in front of colleagues; subjecting her to less favorable and unsafe assignments; limiting her paid breaks; requiring her to work a more difficult schedule; denying her access to the badge/finger punch system; and setting her up to fail.

196.     Defendants discriminated against Ms. Woods during the Relevant Period for her FLSA Protected Reports by actions including, but not limited to, ostracizing her; wrongfully reprimanding her; and subjecting her to less favorable assignments.

197.     Defendants are jointly and severally liable to Ms. Maestas and Ms. Woods under the FLSA for lost back wages, emotional distress, and other damages that Ms. Maestas and Ms. Woods incurred, respectively, as a result of Defendants' actions in retaliation for their FLSA Protected Activity, liquidated double damages on the lost back wages, attorneys' fees, costs, interest, and all other relief deemed just and proper.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs Sherri Maestas and Michele Woods, individually and on behalf of similarly-situated employees, respectfully request as follows:

A.     That Defendants be summoned to appear and answer this Complaint;

B.     For an order of this Honorable Court entering judgment in their favor against Defendants, jointly and severally, for their actual economic damages and non-economic damages in an amount to be determined at trial;

C.     For liquidated double and treble damages;

D.     For their attorneys' fees, costs, and pre-and post-judgment interest; and

E.     For such other relief, including, but not limited to, injunctive relief, compensatory damages, and punitive damages, as this Court deems necessary, just and proper.

32

Respectfully submitted,
PLAINTIFFS,
SHERRI MAESTAS and
MICHELE WOODS, individually and on
behalf of similarly-situated employees,
By Their Attorneys,

/s/ Chip Muller
Chip Muller, Esq. (#7686)
Nancy Sheinberg, Esq. (#7660)
Muller Law, LLC
47 Wood Avenue
Barrington, RI 02806
(401) 256-517I (ph.)
(401) 256-5025 (fax)
chip@mullerlaw.com
Dated: February 23, 2023          nancy@mullerlaw.com

33

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/20/2023 11:44 AM
Envelope: 4006978
Reviewer: Dana B. Z.

Case 1:23-cv-00127-MRD-AEM Document 1-8 Filed 03/30/23 Page 35 of 43 PageID #: 131

# EXHIBIT 1

# (CONSENT TO JOIN FORM)

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/20/2023 11:44 AM
Envelope: 4006976
Reviewer: Dana B. Z.
132

# CONSENT TO JOIN FORM

### Consent to Sue Under the Fair Labor Standards Act (FLSA)

I hereby consent to become a plaintiff, pursuant to 29 U.S.C. §216(b), in the action entitled *Sherri Maestas, et al. v Kent County Memorial Hospital, et al.*, C.A. No. KC-2023-0143, filed in the Rhode Island Superior Court on February 23, 2023 ("Action"), to collect unpaid wages.

I am a current or former employee of Kent County Memorial Hospital ("Kent") and Care New England Health System (together with Kent, "Defendants") who worked as an hourly-paid nursing staff employee performing work caring for patients at Kent. To the best of my knowledge, I was denied wages due to me under the FLSA including as follows:

(i)     <u>Overtime - Automatic Meal Break Collective</u>
In one (1) or more workweek(s) during the three (3) years prior to the filing of the Action, I worked time over forty (40) hours in a workweek ("Overtime Hours") as a member of the Kent nursing staff but was not paid time and a half my regular rate ("Overtime Premium Pay") for all Overtime Hours I worked as a result of Defendants' policy and practice of automatically deducting time for meal breaks that I did not take.

(ii)     <u>Overtime - Manual Deductions Collective</u>
In one (1) or more workweek(s) during the three (3) years prior to the filing of the Action, I worked Overtime Hours as a member of the Kent nursing staff but was not paid Overtime Premium Pay for all Overtime Hours I worked as a result of Defendants' policy and practice of improperly deducting time through manual reductions of my total time worked, altering my punch times, and/or failing to register entire shifts that I worked.

(iii)     <u>Overtime - Bridge Pay Collective</u>
In one (1) or more workweek(s) during the three (3) years prior to the filing of the Action, I worked Overtime Hours in a week in which Defendants promised incentive pay on all hours I worked without regard to my regular schedule ("All-Shift Bridge Pay") but was not paid all Overtime Premium Pay owed as result of Defendants' failure to include all All-Shift Bridge Pay for the week in my regular rate when calculating my Overtime Premium Pay.

I designate Sherri Maestas and Michele Woods, and each of their court authorized substitutes, as class representative(s) to make decisions on my behalf concerning the method and manner of conducting this litigation, the entering of an agreement with counsel concerning attorneys' fees and costs, and all other matters pertaining to this litigation.

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/30/2023 11:44 AM
Envelope: 4006978
Reviewer: Linda B. Z.

### CONSENT TO JOIN FORM (cont.)

Dated: _Feb 23, 2023_

_Sherri Maestas (Feb 23, 2023 13:50 EST)_
**(signature here)**

# Sherri Maestas
**(print name here)**

**Mail, Deliver, Email or Fax to:**    Muller Law, LLC
c/o Chip Muller, Esquire
47 Wood Ave.
Barrington, RI 02806

Phone: (401) 256-5171
Fax:    (401) 256-5178

Email: chip@mullerlaw.com
nancy@mullerlaw.com

2

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/20/2023 11:44 AM
Envelope: 4006978
Reviewer: Dana B. Z.

Case 1:23-cv-00127-MRD-AGM Document 18 Filed 05/30/23 Page 38 of 42 PageID #: 134

# EXHIBIT 1

# (CONSENT TO JOIN FORM)

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/20/2023 11:44 AM
Envelope: 4006978
Reviewer: Dara B. Z.

Case 1:23-cv-00127-MRD-AEM Document 1-8 Filed 05/04/23 Page 39 of 51 PageID #: 135

**CONSENT TO JOIN FORM**

**Consent to Sue Under the Fair Labor Standards Act (FLSA)**

I hereby consent to become a plaintiff, pursuant to 29 U.S.C. §216(b), in the action entitled *Sherri Maestas, et al. v Kent County Memorial Hospital, et al.*, C.A. No. KC-2023-0143, filed in the Rhode Island Superior Court on February 23, 2023 ("Action"), to collect unpaid wages.

I am a current or former employee of Kent County Memorial Hospital ("Kent") and Care New England Health System (together with Kent, "Defendants") who worked as an hourly-paid nursing staff employee performing work caring for patients at Kent. To the best of my knowledge, I was denied wages due to me under the FLSA including as follows:

(i)    Overtime - Automatic Meal Break Collective
In one (1) or more workweek(s) during the three (3) years prior to the filing of the Action, I worked time over forty (40) hours in a workweek ("Overtime Hours") as a member of the Kent nursing staff but was not paid time and a half my regular rate ("Overtime Premium Pay") for all Overtime Hours I worked as a result of Defendants' policy and practice of automatically deducting time for meal breaks that I did not take.

(ii)    Overtime - Manual Deductions Collective
In one (1) or more workweek(s) during the three (3) years prior to the filing of the Action, I worked Overtime Hours as a member of the Kent nursing staff but was not paid Overtime Premium Pay for all Overtime Hours I worked as a result of Defendants' policy and practice of improperly deducting time through manual reductions of my total time worked, altering my punch times, and/or failing to register entire shifts that I worked.

(iii)    Overtime - Bridge Pay Collective
In one (1) or more workweek(s) during the three (3) years prior to the filing of the Action, I worked Overtime Hours in a week in which Defendants promised incentive pay on all hours I worked without regard to my regular schedule ("All-Shift Bridge Pay") but was not paid all Overtime Premium Pay owed as result of Defendants' failure to include all All-Shift Bridge Pay for the week in my regular rate when calculating my Overtime Premium Pay.

I designate Sherri Maestas and Michele Woods, and each of their court authorized substitutes, as class representative(s) to make decisions on my behalf concerning the method and manner of conducting this litigation, the entering of an agreement with counsel concerning attorneys' fees and costs, and all other matters pertaining to this litigation.

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 2/30/2023 11:44 AM
Envelope: 4006938
Reviewer: Linda S. Z.

## CONSENT TO JOIN FORM (cont.)

Dated: **Feb 24, 2023**

_Michele Woods_
Michele Woods (Feb 24, 2023 06:42 GMT+1)
**(signature here)**

## Michele Woods

**(print name here)**

**Mail, Deliver, Email or Fax to:**   Muller Law, LLC
c/o Chip Muller, Esquire
47 Wood Ave.
Barrington, RI 02806

Phone: (401) 256-5171
Fax:    (401) 256-5178

Email: chip@mullerlaw.com
         nancy@mullerlaw.com

2

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 3/30/2023 11:24 AM
Envelope: 4045938
Reviewer: Lindsay Z.

Case 1:23-cv-00127-MRD-ABM   Document 1   Filed 03/30/23   Page 1 of 1 PageID #: 137

# EXHIBIT B

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 3/30/2023 11:24 AM
Envelope: 4045938
Reviewer: Lindsay Z.

Case 1:23-cv-00127-MRD-AEM Document 1-4 Filed 03/30/23 Page 2 of 3 PageID #: 138



# STATE OF RHODE ISLAND

## SUPERIOR COURT

### WAIVER OF SERVICE OF SUMMONS

| Plaintiff/Petitioner | Civil Action File Number |
|---|---|
| Sherri Maestas et al | KC-2023-0143 |
| **Defendant/Respondent** | |
| Kent County Memorial Hospital et al | |

| ☐ Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport, Rhode Island 02840-2913 | ☒ Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick, Rhode Island 02886-0107 |
|---|---|
| ☐ McGrath Judicial Complex<br>Washington County<br>4800 Tower Hill Road<br>Wakefield, Rhode Island 02879-2239 | ☐ Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence, Rhode Island 02903-2719 |

To: Kent County Memorial Hospital

1. I acknowledge receipt that I waive service of a summons in the above-entitled case. I have also received a copy of the complaint in this case, Language Assistance Notice, two (2) copies of this document, and a means by which I can return the signed waiver to you without cost to me.

2. I agree to save the cost of service of a summons and an additional copy of the complaint in this case by not requiring that I (or the entity on whose behalf that I am acting) be served with judicial process in the manner provided by Rule 4.

3. I (or the entity on whose behalf that I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based upon a defect in the summons or in the service of the summons.

4. I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon the opposing party within sixty (60) days after 3/2/2023 _____ or within ninety (90) days after that date
(date request was sent)
if the request was sent outside the United States.

| Name |
|---|
| Matthew H. Parker - Outside Counsel - RI Bar No. 8111 |
| **Signature** |
| *[signature]* |
| Address: Whelan Corrente + Flanders LLP, 100 Westminster St., Ste 710, Providence, RI 02903 |
| Telephone Number: 401-270-4500     Date: 3/2/2023 |

Superior-64 (revised June 2020)

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 3/30/2023 11:24 AM
Envelope: 4045938
Reviewer: Lindsay Z.

Case Number: KC-2023-0143 Document Filed 03/30/2023 Page 3 Page 47 of 51 PageID #: 139



# STATE OF RHODE ISLAND

## SUPERIOR COURT

### WAIVER OF SERVICE OF SUMMONS

| Plaintiff/Petitioner<br>Sherri Maestas at al | Civil Action File Number<br>KC-2023-0143 |
|---|---|
| **Defendant/Respondent**<br>Kent County Memorial Hospital et al | |

| ☐ Murray Judicial Complex<br>Newport County<br>45 Washington Square<br>Newport, Rhode Island 02840-2913 | ☑ Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick, Rhode Island 02886-0107 |
|---|---|
| ☐ McGrath Judicial Complex<br>Washington County<br>4800 Tower Hill Road<br>Wakefield, Rhode Island 02879-2239 | ☐ Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence, Rhode Island 02903-2719 |

To: Care New England Health System

1. I acknowledge receipt that I waive service of a summons in the above-entitled case. I have also received a copy of the complaint in this case, Language Assistance Notice, two (2) copies of this document, and a means by which I can return the signed waiver to you without cost to me.

2. I agree to save the cost of service of a summons and an additional copy of the complaint in this case by not requiring that I (or the entity on whose behalf that I am acting) be served with judicial process in the manner provided by Rule 4.

3. I (or the entity on whose behalf that I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based upon a defect in the summons or in the service of the summons.

4. I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon the opposing party within sixty (60) days after 3/2/2023 _____ or within ninety (90) days after that date

(date request was sent)

if the request was sent outside the United States.

| Name |
|---|
| Matthew H. Parker - Outside Counsel - RI Bar No. 8111 |
| Signature |
| *[signature]* |
| Address: Whelan Corrente + Flanders LLP, 100 Westminster St., Ste. 710, Providence, RI 02903 |
| Telephone Number: 401-270-4500 | Date: 3/2/2023 |

Superior-64 (revised June 2020)

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 3/30/2023 11:24 AM
Envelope: 4045938
Reviewer: Lindsay Z.

CV-00127-MRD-AEM    Document 5    Filed 03/31/23    Page 48 of 51 PageID #: 140

STATE OF RHODE ISLAND                                        SUPERIOR COURT
KENT, SC

SHERRI MAESTAS and MICHELE WOODS,
individually and on behalf of all similarly-
situated employees,
                 *Plaintiffs*,                C.A. No. KC-2023-0143

v.

KENT COUNTY MEMORIAL HOSPITAL
and CARE NEW ENGLAND HEALTH
SYSTEM,
                 *Defendants*.

## DEFENDANTS' REMOVAL NOTICE PURSUANT TO 28 U.S.C. § 1446(d)

Defendants Kent County Memorial Hospital and Care New England Health System

(together, the "Defendants") hereby give notice under 28 U.S.C. § 1446(d) that they have filed

the Notice of Removal (the "Notice of Removal") attached hereto as *Exhibit 1* in the United

States District Court for the District of Rhode Island (the "Federal Court"). Defendants' filing of

this and the attached Notice of Removal with the Clerk of this Court shall effect removal of this

action to the Federal Court, and this Court may proceed no further unless and until this case is

remanded.

[SIGNATURES TO FOLLOW ON SUBSEUQENT PAGE]

Case Number: KC-2023-0143
Filed in Kent County Superior Court
Submitted: 3/30/2023 11:24 AM
Envelope: 4045938
Reviewer: Lindsay Z.

CV-00127-MRD-AEM    Document 5    Filed 03/31/23    Page 49 of 51 PageID #: 141

KENT COUNTY MEMORIAL HOSPITAL and
CARE NEW ENGLAND HEALTH SYSTEM,

By their Attorneys,

/s/ *Joseph D. Whelan*
/s/ *Matthew H. Parker*
/s/ *Timothy K. Baldwin*
Joseph D. Whelan (#5694)
Matthew H. Parker (#8111)
Timothy K. Baldwin (#7889)
WHELAN CORRENTE & FLANDERS LLP
100 Westminster Street, Suite710
Providence, RI 02903
Tel: 401-270-4500
Fax: 401-270-3760
jwhelan@whelancorrente.com
mparker@whelancorrente.com
tbaldwin@whelancorrente.com

Dated: March 30, 2023

## CERTIFICATE OF SERVICE

I hereby certify that, on the 30th day of March, 2023, I caused this document to be filed and served through the electronic filing system on the following counsel of record:

Chip Muller, Esq.
Nancy Sheinberg, Esq.
MULLER LAW, LLC
47 Wood Avenue
Barrington, RI 02806
chip@mullerlaw.com
nancy@mullerlaw.com

The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ *Matthew H. Parker*

2

# SC DOCKET SHEET
## CASE NO. KC-2023-0143

Sherri Maestas et al.                                    §        Location: **Kent County Superior Court**
v.                                                       §        Filed on: **02/23/2023**
Kent County Memorial Hospital et al.                     §    US District Court Case **1:23-cv-00127**
                                                         §        Number:
                                                         §

---

### CASE INFORMATION

**Statistical Closures**                                      Case Type: **Civil Action**
03/30/2023      Closed-Non Trial-Unassigned-Removed to Federal Court

                                                             Case
                                                             Status: **03/30/2023   Closed**

                                                             Case Flags: **Claim for Jury Trial**

---

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**
Case Number            KC-2023-0143
Court                  Kent County Superior Court
Date Assigned          02/23/2023

---

### PARTY INFORMATION

|  |  | *Lead Attorneys* |
|---|---|---|
| **Plaintiff** | **Maestas, Sherri** | **SHEINBERG, NANCY SIEGAL** |
|  |  | *Retained* |
|  |  | 4012565027(W) |
|  | **Woods, Michele** | **SHEINBERG, NANCY SIEGAL** |
|  |  | *Retained* |
|  |  | 4012565027(W) |
| **Defendant** | **Care New England Health System** | **WHELAN, JOSEPH D.** |
|  |  | *Retained* |
|  |  | 4012702758 x000(W) |
|  | **Kent County Memorial Hospital** | **WHELAN, JOSEPH D.** |
|  |  | *Retained* |
|  |  | 4012702758 x000(W) |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|
| 03/30/2023 | Closed-Non Trial-Unassigned-Removed to Federal Court |
| 03/30/2023 | Case Removed to US District Court |
| 03/30/2023 | Notice of Removal |
|  | *Defendant's Removal Notice* |
| 03/07/2023 | Waiver of Service of Summons Filed |
|  | *Waiver of Service Kent County Memorial Hospital* |
| 03/07/2023 | Waiver of Service of Summons Filed |
|  | *Waiver of Service for Care New England Health System* |
| 02/24/2023 | Miscellaneous Motion Filed |
|  | *Consent to Join Michele Woods* |
| 02/24/2023 | Miscellaneous Motion Filed |
|  | *Consent to Join Sherri Maestas* |

# SC DOCKET SHEET
## CASE NO. KC-2023-0143

| | |
|---|---|
| 02/24/2023 | Claim of Jury Trial Filed |
| | *Demand for Trial by Jury* |
| 02/24/2023 | Summons |
| 02/23/2023 | Complaint Filed |
| | *Complaint* |

*Printed on 03/30/2023 at 11:53 AM*