UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SHERRI MAESTAS and MICHELE )
WOODS, )
    Plaintiffs, )
)
v. )    C.A. No. 23-127-JJM-LDA
)
KENT COUNTY MEMORIAL )
HOSPITAL and CARE NEW )
ENGLAND HEALTH SYSTEM, )
    Defendants. )

## ORDER

Before the Court is Defendants Kent County Memorial Hospital and Care New England Health System's Motion to Dismiss Plaintiffs Sherri Maestas and Michele Woods' Complaint. ECF No. 10. Their grounds for dismissal are that Plaintiffs' state law claims are preempted under Section 301 of the Labor Management Relations Act ("LMRA") because they hinge on interpretation of the Collective Bargaining Agreements ("CBAs") binding the parties and certain aspects of their federal Fair Labor Standards Act ("FLSA") claims must be grieved and arbitrated before Plaintiffs can bring them in federal court.

### I.    BACKGROUND

Ms. Maestas and Ms. Woods, along with similarly situated co-workers (collectively "Plaintiffs") at Kent Hospital and Care New England allege that they

were not paid properly in accordance with the terms of the two CBAs.[1] Specifically, Plaintiffs allege that Defendants automatically deducted time from their timecards for meal breaks even when they could not take those breaks because the hospital was busy and understaffed. Plaintiffs also allege that Defendants allowed managers to manually reduce the total hours worked and/or altered punch times on their timecards. The timekeeping system used was faulty, which Defendants knew resulted in mistakes in registering punch in and out times and hours worked that were not recorded. Defendants also promised Plaintiffs bridge pay, an hourly incentive pay to stay at Kent Hospital and to work additional hours and they failed to pay Plaintiffs the full amount promised. Ms. Maestas and Ms. Woods complained about these pay irregularities and broken promises and alleged that Defendants retaliated against them by cancelling their shifts, assigning them less favorable and unsafe work, eliminating breaks, and otherwise treating them poorly.

Plaintiffs filed this suit, leveling nine claims against Defendants under both state and federal law. For the state law claims, Counts 1, 2, and 3 are made pursuant to the Rhode Island Payment of Wages Act, R.I. Gen. Laws § 28-14-1; Counts 6 and 7 are made pursuant to the Rhode Island Minimum Wages Act, R.I. Gen. Laws § 28-12-1; and Count 8 is a retaliation claim under the Rhode Island Whistleblower's Protection Act, R.I. Gen. Laws § 28-50-1. Citing federal statutes, Plaintiffs bring

---

[1] One CBA is for Kent Hospital's Registered Nurses and the other is for its Clerical, Technical, Service, and Skilled Maintenance staff.

Counts 4, 5, and 9 under the FLSA, 29 U.S.C. § 201. Defendants move to dismiss all claims based on preemption and exhaustion principles.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must present facts that make her claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, the Court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief").

## III. DISCUSSION

Defendants move to dismiss Counts 1, 2, 3, 6, 7, and 8 because they argue that each of these state law claims requires interpretation of the CBA and so each is preempted under Section 301 of the LMRA. They move to dismiss the FLSA claims in Counts 4, 5, and 9, arguing that they should be dismissed because the meaning of disputed terms in the CBA must be grieved and arbitrated before Plaintiffs can pursue their FLSA claims. Alternatively, Defendants also move on Counts 1, 2, 3, 6, and 7, arguing that the R.I. Payment of Wages Act ("RIPWA") dictates that a plaintiff must grieve and arbitrate and a court cannot "diminish or impair the rights of a person under a CBA." Defendants additionally move to dismiss Counts 8 and 9 because they argue the retaliation allegations are not plausible.

### A. Section 301 Preemption

Section 301 of the LMRA allows, "[s]uits for violation of contracts between an employer and a labor organization representing employees ...." 29 U.S.C. § 185(a). "In creating § 301 of the LMRA, Congress intended 'that a comprehensive, unified, body of federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements.'" *Fant v. New England Power Serv. Co.*, 239 F.3d 8, 14 (1st Cir. 2001) (quoting *The Developing Labor Law*, at 1698-99 (Patrick Hardin et al. eds., 3d ed. 1992) (1971)). As such, § 301 preempts a state law claim when "'the asserted state law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement.'"

4

*Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54–55 (1st Cir. 2011) (quoting *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997)).

A state law claim can "depend on the meaning" of a CBA if either (1) "'it alleges conduct that arguably constitutes a breach of duty that arises pursuant to a collective bargaining agreement,'" or (2) "'its resolution arguably hinges upon an interpretation of the collective bargaining agreement.'" *Id.* "In deference to the agreed-to remedies, courts ordinarily dismiss claims falling within such provisions—namely, those intertwined with interpretation and application of the CBA—so long as relief can be provided within the CBA process." *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 6 (1st Cir. 2012) (describing this process as preemption, deference, or exhaustion). However, if a "state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).

### 1. STATE LAW CLAIMS (COUNTS 1, 2, 3, 6, 7, 8)

To determine whether Section 301 preempts Plaintiffs' state law claims, the Court must determine whether the claims raise "purely factual questions" that do not require the Court to interpret any CBA term or provision.[2] *Haw. Airlines, Inc. v.*

---

[2] Plaintiffs did not reference or attach the CBAs to their complaint but "[t]he interrelationship of the state claims and a CBA cannot be avoided merely by refusing to identify the CBA in the complaint and citing the well pleaded complaint rule. If a plaintiff's refusal to identify a CBA controlled, removal under section 301 could always be defeated by artful pleading." *Cavallaro*, 678 F.3d at 5 (citing *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997). In this case, Defendants cite the CBAs and Plaintiffs do not dispute its existence or authenticity.

5

*Norris*, 512 U.S. 246, 261 (1994); *Flibotte*, 131 F.3d at 26. In this case, Plaintiffs allege that Kent Hospital "followed a policy and practice of automatically deducting time from each shift" for "one or more meal breaks" and the length of time for each deduction depended on how long the shift worked was. ECF No. 1-1 ¶¶ 29-31. They also allege that Kent had a policy and practice of not allowing the nursing staff to take one or more meal breaks–or a meal break at all–regardless of the hours they worked. *Id.* ¶¶ 37-39; 45. As a way to prevent payment for not taking breaks, Plaintiffs allege that Kent Hospital did not explain that nursing staff could override the automatic meal break deductions and be paid for that time or how they should report that they did not take a meal break. *Id.* ¶¶ 46-49; 51-53. Plaintiffs also allege that Kent Hospital made it challenging for them and other nursing staff members to check their timecards and pay records to determine their accuracy and question their pay. *Id.* ¶¶ 23-28. Plaintiffs allege that they were retaliated against for complaining of the wage and hour violations by being given "less favorable" assignments, prohibited from taking breaks, accused of failing to punch in and out, and other adverse treatment. *Id.* ¶¶ 101-107, 186.

The Court finds that Section 301 preempts Plaintiffs' state law claims in Counts 1, 2, 3, 6, 7, and 8.[3] The CBAs at issue define and discuss the parameters of

---

[3] While considering a retaliation claim may not necessarily require interpretation of the CBAs, the Court finds support in the case law that this claim should also be preempted. The RIWPA states that "[t]his chapter shall not be construed to diminish or impair the rights of a person under any collective bargaining agreement." R.I. Gen. Laws § 28-50-6. In three cases where plaintiffs alleged retaliation, the First Circuit decided that a similar provision in a different statute mandates section 301 preemption where it concluded that the existence of that

6

employee shifts, salary schedules, shift differentials, wage deductions, incentive pay, and when employees can take meal breaks during their shifts. It is obvious that resolution of Plaintiffs' state statutory claims based on allegations that Defendants made automatic time deductions for meal breaks, manual time deductions for meal breaks and other reasons, failed to pay them bridge pay, and retaliated against them are dependent on an interpretation of the CBAs' terms and on the labor relationship between Plaintiffs and Defendants. *Cavallaro*, 678 F.3d at 8 (whether wages are owed implicated "peculiarities of industry-specific wage and benefit structures" found in the CBA so required interpretation); *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 63 (1st Cir. 2021) (meal periods and overtime); *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 14-15 (1st Cir. 2001) (meal periods and overtime); *Hamilton v. Partners Healthcare Sys.*, 209 F. Supp. 3d 397, 410 (D. Mass. 2016) (underpayment of wages and overtime). Therefore, the Court finds that Plaintiffs' state law claims against Defendants are preempted under § 301 and Counts 1, 2, 3, 6, 7, and 8 are dismissed.

---

statutory provision referencing rights under the CBA would require courts to interpret the CBA to determine whether such an agreement is consistent with the rights granted under the CBA. *See Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 11 (1st Cir. 1999); *Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 44 (1st Cir. 1997); *Magerer v. John Sexton Co.*, 912 F.2d 525, 529–30 (1st Cir. 1990).

## 2. FEDERAL LAW CLAIMS (Counts 4, 5, 9)

The FLSA

> grants individual employees broad access to the courts. Section 16(b) of the Act, 29 U.S.C. § 216(b), which contains the principal enforcement provisions, permits an aggrieved employee to bring his statutory wage and hour claims 'in any Federal or State court of competent jurisdiction.' No exhaustion requirement or other procedural barriers are set up, and no other forum for enforcement of statutory rights is referred to or created by the statute.

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.*

Emphasizing the importance of these rights, the United States Supreme Court has "held that congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Id.* at 740–41; *O'Brien v. Town of Agawam*, 350 F.3d 279, 285 (1st Cir. 2003) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50 (1974)) ("'The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence.'"); *Urbani v. Wellesley Coll.*, Civil Action No. 13-cv-11768-ADB, 2016 WL 6571247, at *7 (D. Mass. Jan. 12, 2016) ("It is well-established that an employee's federal statutory rights under the FLSA exist separately and independently from any rights arising out of a collective bargaining agreement...." ); *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 51–53 (1st Cir. 2013) (CBAs do not foreclose claims under the FLSA). "Moreover, the collective-bargaining

process encouraged by the LMRA may, in some cases, erode individual rights protected by the FLSA." *Urbani*, 2016 WL 6571247, at *7.

Defendants move to dismiss Plaintiffs' FLSA claims that are also based on allegations of failure to properly account for overtime and bridge pay and for retaliation. They acknowledge that Section 301 does not preempt federal claims such as those filed under the FLSA and the law is clear that FLSA claims, even if the allegations overlap with contractual or state law claims, are not required to be grieved or arbitrated. *Barrentine*, 450 U.S. at 740–41; *Manning*, 725 F.3d at 51–53. Defendants try to parse this principle, however, by arguing that they are not asking that Plaintiffs grieve and arbitrate the FLSA claims themselves, but that they should grieve and arbitrate the meaning of certain terms in the CBA before litigating their federal claims in court.

To state a claim for nonpayment of wages and overtime under the FLSA, Plaintiffs need only plausibly plead that they are covered employees under the FLSA, and that Defendants failed to pay them wages and overtime for time they worked. *Manning*, 725 F.3d at 43. The FLSA provides a formula for computing overtime wages based on the employee's regular rate of pay. *See* 29 U.S.C.A. § 207(a). Plaintiffs argue that the law does not require them to first grieve and arbitrate any aspect of any claim made under the FLSA but also that the meaning of the terms Defendants say are disputed and whose definitions need to be grieved and arbitrated prior to litigating any federal claim are not actually in dispute.

9

Defendants rely heavily on the Third Circuit Court of Appeals decision in *Vadino v. A. Valey Engineers*, where that court held that exhaustion was required where the FLSA claim seeking more money under the CBA was "entirely dependent" on the CBA's terms. 903 F.2d 253, 266 (3d Cir. 1990). The Court declines to follow *Vadino's* very case-specific holding for two reasons, one practical and one factual. First, *Vadino* was decided outside the First Circuit and, as such, does not provide this Court with a guiding precedent. Second, the facts are not comparable; the plaintiff in *Vadino* argued that the defendant violated the CBA by failing to pay him the journeyman's rate *as defined in the CBA* and the overtime rate commensurate with that rate. *See Urbani*, 2016 WL 6571247, at *5 (finding *Vadino* inapplicable). Plaintiffs here are not disputing their pay rate but claiming that Defendants' failure to properly account for time worked and to include all their differential pay in its calculation of their regular rates resulted in Defendants paying them less than 1.5 times their regular rates for overtime hours. Thus, by not paying them "at a rate not less than one and one-half times the regular rate at which [they are] employed," 29 U.S.C. § 207(a)(1), Plaintiffs claim that Defendants violated the FSLA. The Third Circuit's reasoning in *Vadino* does not suit the facts alleged here.

The First Circuit has noted that "[r]ights conferred by Congress are conceptually distinct from those created by private agreement, and there is no authority for the proposition that rights under the FLSA merge into contractual ones whenever the two overlap." *O'Brien*, 350 F.3d at 284-285 (court rejected the proposition that union workers' FLSA claims were "barred from federal court because

10

they are essentially contract claims for unpaid overtime" and therefore subject to the CBA's grievance and arbitration procedures). Therefore, the Court finds that Plaintiffs' federal claims are distinct from their state law claims, are properly made under the FLSA, and DENIES Defendants' Motion to Dismiss Counts 4, 5, and 9.[4] ECF No. 10.

## IV.  CONCLUSION

The Court DENIES Defendants' Motion to Dismiss as to Counts 4,5, & 9 and GRANTS Defendants' Motion to Dismiss as to Counts 1-3 & 6-8.[5] ECF No. 10.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

November 8, 2023

---

[4] Defendants alternatively move to dismiss Count 9 because they argue the retaliation allegations are not plausible. Defendants lob several arguments not only as to timeliness and appropriateness under the statutes of some of Plaintiffs' retaliation allegations but also that some of the allegations are too conclusory. At this stage of the litigation taking their allegations in the light most favorable to Plaintiffs, the Court finds that their retaliation claim is sufficient to put Defendants on notice of the conduct at issue and therefore states a claim.

[5] Defendants also moved on Count 8 for failure to state a claim, but the Court will not address the argument as to that count because it has already dismissed it.